**FILED**
**Apr 18, 2019**
**11:51 AM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



### TENNESSEE BUREAU OF WORKERS' COMPENSATION
### IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT MEMPHIS

| | | |
|---|---|---|
| **DE'BRESHIA LARRY,** | ) | |
| **Employee,** | ) | **Docket No. 2018-08-0945** |
| **v.** | ) | |
| **CASH AMERICA INT'L,** | ) | |
| **Employer,** | ) | |
| **And** | ) | **State File No. 63568-2017** |
| **TRAVELERS INDEMNITY CO.,** | ) | |
| **Carrier,** | ) | |
| **and** | ) | |
| **SUBSEQUENT INJURY AND** | ) | **Judge Deana Seymour** |
| **VOCATIONAL RECOVERY FUND.** | ) | |

---

### EXPEDITED HEARING ORDER

---

This case came before the Court on March 25, 2019, for an Expedited Hearing. The central issue is whether De'breshia Larry's right-knee injury is idiopathic or work-related. For the reasons below, the Court holds the injury is work-related and she is entitled to medical benefits.

### History of Claim

Ms. Larry claimed she injured her right knee at work on August 21, 2017. She immediately notified Cash America International of her injury and went to the emergency room. The emergency room records indicated that Ms. Larry presented with sudden right-knee pain that started just before her arrival. She was diagnosed and treated for a lateral dislocation of her patella, which the note mentioned she experienced several times as a child.

The parties agreed on very little about the events of August 21. Both agreed that Ms. Larry's right knee dislocated while she was behind the counter at work, but they

1

vehemently contested the details surrounding her injury.

Ms. Larry testified that when she turned to help a customer, part of her right foot landed on the edge of a safety mat and part landed on the floor. She felt a pop in her right knee and almost fell. Her co-worker, Damien Coleman, caught her and laid her on the counter. Another co-worker drove her to the emergency room.

Cash America relied on the live testimony of Aquavia Means and the affidavits of Mr. Coleman and Schuyler Crowe. Ms. Means testified that she witnessed Ms. Larry's injury and prepared an incident report. According to Ms. Means, Ms. Larry did not turn or twist before her knee dislocated. Instead, she took two steps and fell. Ms. Means testified that Ms. Larry was not near the safety mat when she fell, and she denied that any customers were in the store.

Mr. Coleman's affidavit testimony supported Ms. Means' version of events. He also testified that Ms. Larry never told him she injured her knee while twisting or turning.

Ms. Crowe testified by affidavit that she notified Ms. Larry her claim was denied because no workplace hazard caused her condition. She sent Ms. Larry the Notice of Denial on August 23.

After learning that Cash America denied her claim, Ms. Larry treated on her own with Dr. Nahum Beard and Dr. Anthony Mascioli at Campbell Clinic. Ms. Larry advised Dr. Beard that she dislocated her knee when she shifted her weight to her right leg and her kneecap popped out to the side. She indicated that her knee had never done this before, but she mentioned having "mechanical symptoms" as a child. She told Dr. Mascioli she was standing at work, twisted, and her knee gave out. She denied any previous history of knee instability.

Dr. Beard diagnosed Ms. Larry with a patellar dislocation and possible underlying dysplasia that might have predisposed her to the dislocation. He placed her in a brace, ordered an MRI, and referred her to Dr. Mascioli to discuss further options. Dr. Mascioli planned to treat Ms. Larry conservatively. However, Ms. Larry decided to change and began treating with Dr. Richard Ennis.

Ms. Larry advised Dr. Ennis that she injured her right knee when she turned suddenly and felt a pop in her knee. According to Dr. Ennis' office note, Ms. Larry had experienced two additional dislocations since that time. Dr. Ennis initially recommended conservative treatment but ultimately referred Ms. Larry to Dr. Robert Bobo to consider surgery. After examining Ms. Larry's knee and reviewing her MRI report, Dr. Bobo noted the findings were "not extremely strong for surgical treatment." He injected her knee, referred her to physical therapy, and prescribed medication.

When she did not improve, Dr. Bobo referred her to Dr. Michael Hood. In an April 6, 2018 office note, Dr. Hood observed "gross instability with lateral patella instability" in the right knee despite "exhaustive conservative management" over an eight-month period. He recommended a medial patellofemoral ligament reconstruction and indicated that her work incident was 100% responsible for her current condition. He specifically indicated that Ms. Larry had no preexisting patellofemoral dysplasia and there was "no reason to believe this was a congenital problem."

On October 19, Ms. Larry filed a Petition for Benefit Determination (PBD) seeking medical and temporary disability benefits as well as attorneys' fees. At the time of the Expedited Hearing, Ms. Larry continued to have problems with her right knee and insisted she needed the recommended surgery. She also continued to work for Cash America and received a promotion to assistant store manager. She testified that she had no hospitalizations, health conditions, or restrictions before her work injury.

Cash America argued that Ms. Larry changed her version of events several times during the course of her claim. It pointed to the histories Ms. Larry gave to her medical providers, the description of her injury in her PBD, and her testimony about the incident in her affidavit. Cash America also referenced portions of Ms. Larry's medical records where providers mentioned previous problems with her right knee as a child. Further, it pointed out that none of Ms. Larry's providers took her off work during her treatment.

The Subsequent Injury and Vocational Recovery Fund (SIF) moved to be dismissed as Ms. Larry continued to work and did not suffer from a permanent and pre-existing disabling condition before the alleged injury. The Court took the motion under advisement. The Court finds this motion premature. An Expedited Hearing is interlocutory in nature and not for final decisions. However, the SIF may file a written motion for relief. The present motion is denied.

**Findings of Fact and Conclusions of Law**

*Standard Applied*

At an Expedited Hearing, Ms. Larry need not prove every element of her claim by a preponderance of the evidence but must come forward with sufficient evidence from which the trial court can determine that she is likely to prevail at a hearing on the merits. *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015). This lesser evidentiary standard does not relieve Ms. Larry of the burden to produce evidence of an injury by accident that arose primarily out of and in the course and scope of employment, but "allows some relief to be granted if that evidence does not rise to the level of a 'preponderance of the evidence.'" *Buchanan v. Carlex Glass Co.,* 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *6 (Sept. 29, 2015).

*Idiopathic Injury*

Turning to the central issue of this case, the Court must first determine whether Ms. Larry sustained an idiopathic right-knee injury. An idiopathic injury is one that "has an unexplained origin or cause, and generally does not arise out of the employment." *McCaffery v. Cardinal Logistics*, 2015 TN Wrk. Comp. App. Bd. LEXIS 50, at *9 (Dec. 10, 2015). If an employment hazard causes or exacerbates an injury that occurs due to an idiopathic condition, however, the injury is compensable. *See id*. at *10. Cause in this context means "the accident originated in the hazards to which the employee was exposed as a result of performing his job duties," and the Court must focus on the causal link between the employment and the accident or injury not the employment and the idiopathic episode. *Id*. at *10-11.

Ms. Larry testified that when she turned to help a customer, her right foot planted on the edge of the safety mat so that part of her foot landed on the mat and part landed on the floor. She felt a pop in her right knee and almost fell. She testified similarly in her affidavit. In her PBD, Ms. Larry did not mention the safety mat, but she described twisting and hurting her knee at work. She provided a similar history to Dr. Mascioli and told Dr. Ennis that she "turned suddenly" and felt a pop in her knee.

The Court recognizes that credibility is an integral issue in this case and appreciates the concerns Cash America raised regarding Ms. Larry's version of events. The Court acknowledges that she gave somewhat inconsistent histories to the doctors. She also had trouble recalling who witnessed her injury and where she received emergency care. However, "[e]ven if minor and insignificant details vary, an injured worker should not be penalized simply for being a poor historian." *Orman v. Williams Sonoma, Inc.,* 803 S.W.2d 672, 677 (Tenn. 1991). While Ms. Larry might not be a good historian, she made a credible witness. She testified calmly and confidently and was reasonable and forthcoming. *See Kelly v. Kelly,* 445 S.W.3d 685, 694-5 (Tenn. 2014).

The Court also recognizes that witnesses to the incident do not recall Ms. Larry turning or twisting when the injury occurred. However, in light of Ms. Larry's testimony and the photographs introduced of the counter area and safety mat, the Court finds her version of events more convincing. The photographs show that the safety mat spans the entire length of the counter, so if she was standing behind the counter, as everyone has indicated, she would be on or near the safety mat.

The irony of finding that a "safety mat" posed a hazard does not escape the Court, but in this case, the evidence leads to this very conclusion. Therefore, based on the foregoing, the Court holds that Ms. Larry is likely to succeed at a hearing on the merits in proving she did not sustain an idiopathic injury.

4

*Arising Primarily Out of Employment*

The Court further holds that Ms. Larry is likely to succeed at a hearing on the merits in proving her condition arose primarily out of her employment. An injury "arises primarily out of and in the course and scope of employment" only if it has been shown by a preponderance of the evidence that the employment contributed "more than fifty percent (50%) in causing the injury, considering all causes." Tenn. Code Ann. § 50-6-102(14)(B). Medical evidence is generally required to establish a causal relationship, except in the most "obvious, simple [or] routine cases." *Berdnik v. Fairfield Glade Cmty. Club*, 2017 TN Wrk. Comp. App. Bd. LEXIS 32, at *10-11 (May 18, 2017).

Ms. Larry introduced Dr. Hood's April 27, 2018 opinion indicating that her work incident was 100% responsible for her current medical condition. Cash America did not introduce any medical proof to contradict this opinion. Instead, it pointed to medical records that mentioned prior problems with her knee during childhood and noted possible underlying dysplasia that predisposed her to a patellar dislocation. However, Ms. Larry denied telling her medical providers that she had problems with her knee as a child. Moreover, Dr. Hood specifically stated that Ms. Larry had no preexisting patellofemoral dysplasia and stated there was "no reason to believe this was a congenital problem." Based on this evidence, the Court holds that Ms. Larry is likely to prevail at a hearing on the merits on this issue.

*Medical Benefits*

Since Ms. Larry showed a likelihood of success in proving that her injury arose primarily out of her employment, Cash America is required to provide reasonable and necessary medical treatment for her work injury. *See* Tenn. Code Ann. § 50-6-204(a)(1)(A). Cash America denied Ms. Larry's claim two days after her injury and never provided medical benefits or a panel of physicians. If an employer fails to provide a panel, it risks having to pay for all reasonable and necessary medical expenses incurred by an employee for treatment with an unauthorized physician and also risks having to provide continuing care with the unauthorized physician. *See Young v. Young Elec.*, 2016 TN Wrk. Comp. App. Bd. LEXIS 24, at *16 (May 25, 2016).

While Ms. Larry provided no proof of the expenses incurred for her unauthorized treatment, the Court designates Dr. Hood as Ms. Larry's authorized treating physician for ongoing treatment. Ms. Larry specifically asked the Court to order the surgery recommended by Dr. Hood. However, Dr. Hood made his surgical recommendation over a year ago, and his treatment plan might have changed. Therefore, the Court orders Cash America to provide Ms. Larry with all reasonable and necessary medical treatment recommended by Dr. Hood for her work injury.

*Temporary Disability Benefits*

To receive temporary total disability benefits, Ms. Larry must show (1) total disability from working as the result of a compensable injury; (2) a causal connection between the injury and the inability to work; and (3) the duration of the period of disability. *Shepherd v. Haren Constr. Co., Inc.,* 2016 TN Wrk. Comp. App. Bd. LEXIS 15, at *13 (Mar. 30, 2016).

The medical records do not show that Ms. Larry's medical providers took her off work or placed her on restricted duty as a result of her knee injury. Ms. Larry admitted that her doctors never took her off work. Therefore, she is not entitled to temporary disability benefits at this time.

*Attorneys' Fees*

Ms. Larry's counsel requests attorneys' fees under Tennessee Code Annotated section 50-6-226(d)(1)(B). This statute does not set a time for attorneys' fee awards, but the Appeals Board stated:

> Given the uncertainties inherent in litigation, the limited issues typically addressed at expedited hearings, the fact that discovery and medical proof often are incomplete at an interlocutory stage of a case, the standard of proof that applies at expedited hearings, and the fact that a trial judge's determinations at an interlocutory hearing are subject to change at any time prior to the entry of a final compensation hearing order, a decision to award attorneys' fees and expenses at an interlocutory stage of a case should be made only in extremely limited circumstances.

*Thompson v. Comcast Corp.,* 2018 TN Wrk. Comp. App. Bd. LEXIS 1, at *28-29 (Jan. 30, 2018). The Court holds this case does not fall within "extremely limited circumstances" to justify an award of attorneys' fees at this interlocutory stage. Thus, the Court denies this request at this time.

**IT IS, THEREFORE, ORDERED** as follows:

1. Cash America shall provide Ms. Larry with reasonable and necessary medical treatment under Tennessee Code Annotated section 50-6-204. The Court designates Dr. Michael Hood as Ms. Larry's authorized treating physician for ongoing treatment.

2. No temporary disability benefits are due at this time.

3. This matter is set for a Scheduling Hearing on **June 3, 2019, at 11:00 a.m. central time.** You must call toll-free at 866-943-0014 to participate in the Hearing. Failure to call may result in a determination of the issues without your participation.

4. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit by email at WCCompliance.Program@tn.gov.

**ENTERED April 18, 2019.**

_____

**JUDGE DEANA C. SEYMOUR**
**Court of Workers' Compensation Claims**

**APPENDIX**

Exhibits:
1. Medical records with Table of Contents (Collective)
2. Petition for Benefit Determination
3. Dispute Certification Notice
4. Request for Expedited Hearing, with Affidavit of De'Breshia Larry in Support of Request for Expedited Hearing
5. Subsequent Injury and Vocational Recovery Fund's Expedited Hearing Brief
6. Employer's Witness List
7. Employer's Exhibit List
7a. Photographs (Collective)
7b. Work-Related Injury/Illness Report
7c. Notice of Denial of Claim for Compensation
7d. Affidavit of Damien Coleman
7e. Signed statement of Marcus Taylor (For identification only)
7f. Affidavit of Schuyler Crowe
8. Employee's Witness List

7

9. Employee's Exhibit List, with attachments
10. Employer/Carrier's Expedited Hearing Pre-Trial Brief, with attachments
11. Photograph of safety mat
12. Affidavit of Attorney Andrew L. Wener

Technical Record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing, with attached Affidavit of De'Breshia Larry in Support of Request for Expedited Hearing
4. Subsequent Injury and Vocational Recovery Fund's Expedited Hearing Brief
5. Employer's Witness List
6. Employer's Exhibit List, with attachments
7. Employee's Motion in Limine
8. Employee's Witness List
9. Employee's Exhibit List, with attachments
10. Employer/Carrier's Expedited Hearing Pre-Trial Brief, with attachments
11. Employee's Second Motion in Limine
12. Employer/Carrier's Response to Employee's Motions in Limine

## CERTIFICATE OF SERVICE

I certify that a copy of this Order was sent to these recipients by the following methods of service on April 18, 2019.

| Name | Certified Mail | Fax | Regular mail | Email | Sent to: |
|---|---|---|---|---|---|
| Andrew Wener, Employee's attorney | | | | X | awener@wenerlawfirm.com |
| Paul Nicks, Employer's attorney | | | | X | pnicks@travelers.com |
| Timothy Kellum, SIF Attorney | | | | X | timothy.kellum@tn.gov |

_____
**Penny Shrum, Court Clerk**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**

8



<u>Expedited Hearing Order Right to Appeal</u>:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board.  To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed.  When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal.  Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service.  In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee.  You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal.  **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal.  You may request from the court clerk the audio recording of the hearing for a $25.00 fee.  If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal.  Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal.  The statement of the evidence must convey a complete and accurate account of the hearing.  The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board.  If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence.  The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement.  All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



**EXPEDITED HEARING NOTICE OF APPEAL**
Tennessee Division of Workers' Compensation
www.tn.gov/labor-wfd/wcomp.shtml
wc.courtclerk@tn.gov
1-800-332-2667

Docket #: _____

State File #/YR: _____

**Employee** _____

v. 

**Employer** _____

## Notice

Notice is given that _____

[List name(s) of all appealing party(ies) on separate sheet if necessary]

appeals the order(s) of the Court of Workers' Compensation Claims at _____

_____ to the Workers' Compensation Appeals

Board. [List the date(s) the order(s) was filed in the court clerk's office]

**Judge**_____

## Statement of the Issues

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

## Additional Information

**Type of Case** [Check the most appropriate item]

☐ Temporary disability benefits
☐ Medical benefits for current injury
☐ Medical benefits under prior order issued by the Court

## List of Parties

**Appellant (Requesting Party):**_____ At Hearing: ☐Employer ☐Employee

Address:_____

Party's Phone:_____ Email:_____

Attorney's Name:_____ BPR#: _____

Attorney's Address:_____ Phone: _____

Attorney's City, State & Zip code:_____

Attorney's Email:_____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name:_____ SF#:_____ DOI:_____

## Appellee(s)

**Appellee (Opposing Party):**_____ At Hearing: ☐Employer ☐Employee

Appellee's Address:_____

Appellee's Phone:_____Email:_____

Attorney's Name:_____ BPR#: _____

Attorney's Address:_____ Phone: _____

Attorney's City, State & Zip code: _____

Attorney's Email:_____

*\* Attach an additional sheet for each additional Appellee \**

## CERTIFICATE OF SERVICE

I,_____, certify that I have forwarded a true and exact copy of this Expedited Hearing Notice of Appeal by First Class, United States Mail, postage prepaid, to all parties and/or their attorneys in this case in accordance with Rule 0800-02-22.01(2) of the Tennessee Rules of Board of Workers' Compensation Appeals on this the_____day of_____, 20___

[Signature of appellant or attorney for appellant]    _____



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

### AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name:_____    2. Address: _____

3. Telephone Number: _____    4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____  Relationship: _____

_____  Relationship: _____

_____  Relationship: _____

_____  Relationship: _____

6. I am employed by: _____

    My employer's address is: _____

    My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ per month | beginning _____ |
| SSI | $ _____ per month | beginning _____ |
| Retirement | $ _____ per month | beginning _____ |
| Disability | $ _____ per month | beginning _____ |
| Unemployment | $ _____ per month | beginning _____ |
| Worker's Comp. | $ _____ per month | beginning _____ |
| Other | $ _____ per month | beginning _____ |

9. My expenses are:

Rent/House Payment $ _____ per month     Medical/Dental $ _____ per month

| | | |
|---|---|---|
| Groceries | $ _____ per month | Telephone $ _____ per month |
| Electricity | $ _____ per month | School Supplies $ _____ per month |
| Water | $ _____ per month | Clothing $ _____ per month |
| Gas | $ _____ per month | Child Care $ _____ per month |
| Transportation | $ _____ per month | Child Support $ _____ per month |
| Car | $ _____ per month | |
| Other | $ _____ per month (describe: _____ ) | |

10. Assets:

Automobile      $ _____     (FMV) _____

Checking/Savings Acct. $ _____

House      $ _____     (FMV) _____

Other      $ _____     Describe: _____

11. My debts are:

| Amount Owed | To Whom |
|---|---|
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____
APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.

_____
NOTARY PUBLIC

My Commission Expires:_____

LB-1108 (REV 11/15)              RDA 11082